CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2012 MAR -5 PM 3: 10

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## SAN ANGELO DIVISION

| | |
|---|---|
| DONNY S. BRANDSTETTER<br>**Plaintiff,** § § § § | |
| **vs.** § § § | **Civil Action No. 6:11-CV-016-BL**<br>**ECF** |
| MICHAEL J. ASTRUE,<br>**Commissioner of Social Security,** § § § § | |
| **Defendant.** § | |

## REPORT AND RECOMMENDATION

**THIS CASE** is before the court upon Plaintiff's complaint filed February 21, 2011, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act (Doc. 1). On February 22, 2011, the United States district judge, pursuant to 28 U.S.C. § 636(b), reassigned this case to the United States magistrate judge for all further proceedings. Plaintiff filed a brief in support of his complaint on August 22, 2011 (Doc. 20), Defendant filed a brief on September 20, 2011 (Doc. 21), and Plaintiff filed his reply on October 5, 2011 (Doc. 22). This court has considered the pleadings, the briefs, and the administrative record and recommends that the United States district judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I. STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits on October 18, 2004, and protectively for SSI benefits on September 29, 2004, alleging disability beginning August 13, 2004. Tr. 22. Plaintiff's applications were denied initially and upon reconsideration. Tr 22, 46-49, 52-58. Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") on May 18, 2005. Tr. 22. The ALJ rendered a partially favorable decision establishing disability August 4, 2005, but not prior thereto. On January 24, 2008, the Appeals Council remanded the case for a new decision, but *only* with respect to the issue of disability prior to August 4, 2005. *Id.*

The ALJ held a supplemental hearing on November 6, 2008. Tr. 22, 471-99. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 475-84. John Simonds, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 484-99. The ALJ issued a decision partially favorable to Plaintiff on March 20, 2009. Tr. 17-30.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements on December 31, 2004, and that Plaintiff had not engaged in substantial gainful activity at any time since August 13, 2004. Tr. 24.

**During the Period of August 13, 2004, to May 31, 2005**

The ALJ found that, during the period of August 13, 2004, to May 31, 2005, Plaintiff had "severe" impairments, including hypertension, diabetes, morbid obesity, hip pain, back pain, and coronary artery disease. Tr. 25. Plaintiff's impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 27.

The ALJ found that Plaintiff could not return to his past relevant work as a motor vehicle mechanic or pump repairer. Tr. 28. He noted that Plaintiff was considered a "younger individual" with a limited formal education. 20 C.F.R. §§ 416.963, 416.964; Tr. 28.

The ALJ found that Plaintiff retained the RFC to perform a range of light work activity, limited to jobs that require only occasionally lifting/carrying 20 pounds; only frequently lifting/carrying 10 pounds; standing/walking for about 2 hours in an 8-hour workday; sitting for about 6 hours in an 8-hour workday, periodically alternating sitting/standing to relieve pain or discomfort; no climbing ramps, ladders, ropes, or scaffolds; no balancing; no working in excessive heat or around hazardous moving machinery or unprotected heights; only frequently kneeling, crouching, and stooping. Tr. 25-26. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 28. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of small products assembler, with 9,300 jobs in Texas and 183,000 jobs nationally; bench assembler, with 3,200 jobs in Texas and 113,000 jobs nationally; and furniture rental consultant, with 2,200 jobs in Texas and 92,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id.*

-3-

**During the Period of May 31, 2005, to August 4, 2005**

The ALJ found that, during the period of May 31, 2005, to August 4, 2005, Plaintiff could not return to his past relevant work. Tr. 29. Plaintiff retained the RFC to work-related physical and mental activities for substantially less than a regular and continuing basis. The ALJ, therefore, concluded that Plaintiff was disabled within the meaning of the Social Security Act during the period of May 31, 2005, to August 4, 2005, but not *prior thereto*. *Id.*

Plaintiff submitted a Request for Review of Hearing Decision/Order on May 29, 2009. Tr. 15-16. After granting a 25-day extension, the Appeals Council denied Plaintiff's request and issued its opinion on October 22, 2010, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 9-12. The ALJ's decision, therefore, became the final decision of the Commissioner.

On February 21, 2011, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton*, 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found that Plaintiff was disabled within the meaning of the Social Security Act during the period of May 31, 2005, to August 4, 2005, but not ***prior thereto***. Tr. 30.

### III. DISCUSSION

Plaintiff raises three issues on appeal. First, he argues that the ALJ committed error in assessing certain of the medical opinions given by Dr. Nair, Dr. Barnett, and Ms. Valerie Mills. Second, he argues that the ALJ failed to consider all of the functional effects of Plaintiff's medically established impairments. Lastly, he claims that the ALJ violated agency policy when he failed to consider that Plaintiff was only eight months shy of age 50 when his insured status expired.

**A.    Whether the ALJ erred in assessing the opinion evidence of record.**

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would

allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff contends that in evaluating the opinion of several of his treating medical sources, Dr. Nair, Dr. Barnett, and Valerie Mills, the ALJ did not consider each of the six factors set out for evaluating such evidence as required by 20 C.F.R. § 404.1527(d). *See Newton,* 209 F.3d at 456–58 (requiring, in the absence of competing first-hand medical evidence, that the ALJ consider each of the § 404.1527(d) factors in evaluating the medical opinion of a treating physician). The controversy seems to primarily focus on several letters written by the doctors, which indicate that Plaintiff could not return to gainful employment in the near future. *See* Tr. 358, 337, 320, and 311. Plaintiff argues that these letters should have been evaluated using each of the factors set out in § 404.1527(d) before being ignored or rejected.

Under *Newton,* "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimants treating specialist"; however, *Frank* held that this requirement applies only to "medical opinions" and does not apply to conclusory statements that a claimant is disabled. *See Newton,* 209 F.3d at 456; *Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'").

Assuming that the ALJ did not consider the six factors in subsection (d), he was not required to do so with respect to the doctors' opinions that Plaintiff could not work because such opinions are not "medical opinions" within the meaning of the regulation. *Id.*

With respect to the portions of the letters that address Plaintiff's medically determinable impairments, that is, Plaintiff suffered from coronary heart disease, diabetes, hypertension, and morbid obesity, the ALJ did not reach any conclusions that conflicted with the doctors' opinions.

-6-

The ALJ specifically found that Plaintiff had the following severe impairments: hypertension, diabetes, morbid obesity, hip pain, back pain, and coronary artery disease. Tr. 25. The ALJ's findings of fact on Plaintiff's medically determinable impairments thus do not conflict with the opinions of Dr. Nair and Dr. Barnett.

Additionally, Plaintiff also claims that the ALJ failed to appropriately consider the residual functional capacity questionnaire form completed by cardiology nurse specialist, Valerie Mills.

The questionnaire was completed May 31, 2005, the date the ALJ identified as Plaintiff's disability onset date. Plaintiff argues that the medical expert, upon whose opinion the ALJ relied in selecting the disability onset date, chose the date because it was written on the residual functional capacity questionnaire form. Plaintiff claims that on the same form, Mills indicated that the limitations and symptoms that she described therein began as early as September 16, 2002, which suggests a possible disability onset date much earlier than that found by the ALJ. Thus, Plaintiff does not claim that the ALJ failed to consider the entire May 31, 2005, assessment form; rather, he claims that the ALJ failed to consider the specific portion indicating that his symptoms and limitations began in September 2002. Because Mills completed the questionnaire after Plaintiff's date last insured, her opinion with regard to the onset date of Plaintiff's symptoms and limitations is considered a retrospective medical diagnosis. *See Luckey v Astrue*, No. 11-20115, 2011 WL 6340884, at *4 (5th Cir. Dec. 19, 2011) (citing *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) (assessment completed after Plaintiff's date last insured, considered a retrospective medical diagnosis)). In *Likes*, the court explained that while retrospective medical diagnosis may constitute relevant evidence of the onset of disability, they must be "corroborated by lay evidence relating back to the claimed period of disability" or contemporaneous medical reports. *Id.* Thus, Mills's claimed

onset date should only have been considered if it was corroborated by other contemporaneous evidence.

Plaintiff's brief does not specifically identify any corroborating lay evidence or contemporaneous medical reports that support Mills's indication that Plaintiff's symptoms and limitations were present as early as September 16, 2002. Indeed, the records that bear Mills's name, prior to May 31, 2005, are all consistent with the findings of the ALJ and inconsistent with her assertions regarding symptoms and limitations as early as September 2002.

On February 27, 2004, Mills found that: Plaintiff could continue his activity level; was allowed to drive; and had no anginal symptoms, dizziness, shortness of breath, or edema. Tr. 362-369. She again noted the same finding on March 29, 2004, and additionally indicated that Plaintiff should continue with his diet and exercise program and cardiac rehab. Tr. 359-360. On May 17, 2004, Mills examined Plaintiff and found that although he complained of intermittent chest pain while undergoing cardiac rehabilitation, he had no shortness of breath and his EKG showed a normal heart rhythm consistent with his March 2004 EKG. Tr. 353-357. In June of 2004, Plaintiff complained of chest pain while in rehab and he was instructed to take a stress test. Tr. 342. Mills noted that Plaintiff's stress test results were abnormal, and that his medical management would be maximized to attempt to control the chest pain he complained of. Tr. 342. Notably, none of Mills's earlier diagnostic notes lists Plaintiff as having symptoms of weakness, fatigue, shortness of breath, nausea, palpitations, dizziness, edema, or sweatiness - all of which Mills retrospectively indicated that Plaintiff experienced since September 2002. Tr. 289-293. Further, none of Mills's earlier reports list any of the functional limitations indicated in the questionnaire. Therefore, the court finds that the ALJ appropriately evaluated Mills's response to the questionnaire and the ALJ's

determination of disability onset date is supported by substantial evidence. The ALJ thus did not err in assessing the opinion evidence of record.

**B.      Whether the ALJ erred in assessing Plaintiffs's residual functional capacity.**

Plaintiff, citing to *Bowling*, contends that the hypothetical question the ALJ posed to the vocational expert failed to "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *See* Plaintiff's Brief at 20 (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A closer review of Plaintiff's argument reveals, however, that he is not attacking the hypothetical itself; rather, he is attacking the residual functional capacity finding upon which the hypothetical is based.[1] This argument is inapposite to that presented in *Bowling*.

Plaintiff claims that the hypothetical was deficient because it did not take into consideration impairments that would have been revealed had the ALJ complied with several instructions given by the Appeals Council. However, Plaintiff is administratively barred from raising a claim based on the ALJ's failure to comply with the Appeals Council's instructions because he failed to raise such claims in his second review by the Appeals Council. *See* Tr. 469-470; *Rosas v. Apfel*, 189 F.3d 470 (5th Cir. 1999) (citing *McQueen v. Apfel*, 168 F.3d 152, 155 (5th Cir.1999)).

Plaintiff also avers that substantial evidence does not support the ALJ's finding that Plaintiff retained the residual functional capacity to perform a limited range of light work, including jobs as a small products assembler, bench assembler, and furniture rental consultant. The ALJ considered all the evidence and testimony and determined the impairments he found to be credible. The ALJ

---

[1]If the court reviewed Plaintiff's argument pursuant to *Bowling*, his claim would certainly fail. The ALJ's hypothetical question incorporated the exact disabilities of the claimant that he recognized in his findings. *Compare* Tr. 495 (question posed to vocational expert), and Tr. 25-26 (finding of the ALJ).

then posed a hypothetical to a vocational expert, which incoporated those impairments.[2]   The

vocational expert testified that Plaintiff was capable of performing work as a small products

assembler, bench assembler, and furniture rental consultant, work which exists in significant

numbers in the national economy.   Although Plaintiff disagrees with the ALJ's assessment of his

impairments, specifically the ALJ's failure to include a visual limitation finding, and asserts his

inability to perform the jobs identified by the vocational expert, this court may not "reweigh the

evidence in the record."   *See Robinson v. Astrue*, 271 F. App'x 394, at *2 (5th Cir. 2008) (citing

*Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999).   Consequently, the court finds that the ALJ's

findings are based on substantial evidence.

C.     **Whether the ALJ erred by not considering Plaintiff's borderline age.**

Plaintiff claims that the ALJ incorrectly identified him as retaining the RFC to perform work

at the light exertional level rather than at the sedentary level.   Plaintiff notes that under the Grids,

a 50 year-old claimant with a sedentary RFC leads to a finding of disability.   He argues that the

temporal proximity between his date last insured and his 50th birthday - eight months - creates a

borderline age situation, which coupled with a sedentary RFC finding, would have directed a finding

of disability, on or before his date last insured. The linchpin of Plaintiff's argument, therefore, is that

the ALJ incorrectly classified him as retaining the ability to perform work at the light, rather than

sedentary, extertional level.

The court has reviewed the findings of the ALJ, and is unable to find support for Plaintiff's

contention that the ALJ found that he was able to perform a full range of light work.   In his opinion,

the ALJ expressly acknowledges that Plaintiff's limitations prohibited him from performing the full

---

[2]*See Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir.2000) (holding that vocational expert testimony in response to a hypothetical can constitute substantial evidence of residual functional capacity).

range of work at the light extertional level. The ALJ explained that because he did not find that Plaintiff could perform a full range of light work, the Grids did not direct a finding. Tr. 28. The ALJ found that Plaintiff could perform a limited range of "light work" activity and relied upon the vocational expert's identification of jobs that a person of Plaintiff's age, with his vocational history, RFC, and non exertional limitations could perform, to support the step 5 finding. To the extent that Plaintiff argues that he is unable to perform the work identified by the ALJ, Plaintiff has offered no evidence that he was incapable of performing the types of work that the ALJ determined were available and that he was capable of performing, thereby failing to meet his burden of proof at step 5. *See Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.1990)).

Additionally, although Plaintiff asserts this is a borderline age situation, the Fifth Circuit has repeatedly explained that "borderline" is not specifically defined either by statute or regulation, and that the absence of a definition indicates the Commissioner has significant discretion to determine when a situation is borderline. *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988); *see also Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987) (Commissioner vested with considerable discretion in borderline situations). Other than the fact that Plaintiff was approximately eight months from his 50th birthday when the ALJ's decisions were issued (which would change his status from a "younger" individual to a person "closely approaching advanced age"), he presents nothing to support his argument that the ALJ erred in finding him to be a "younger" person.

Accordingly, Plaintiff has failed to show that the Commissioner's decision was not based on the proper legal standards or that it was not supported by substantial evidence.

## IV.  CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States district judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

Plaintiff having refused consent to having the United States magistrate judge conduct all further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United States district judge.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

DATED this 5th day of March, 2012.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**